226 P.3d 1227 (2009)
In re the Parental Responsibilities Concerning L.S., a Child, and Concerning Tatanjia Willard Spotanski McNamara, Petitioner-Appellee, and
Stacy Joe Spotanski, Respondent-Appellant.
No. 08CA1872.
Colorado Court of Appeals, Div. VII.
October 15, 2009.
*1229 Tatanjia Willard Spotanski McNamara, pro se.
William E. Zimsky, P.C., William E. Zimsky, Durango, CO, for Respondent-Appellant.
Opinion by Judge CONNELLY.
This dispute between Stacy Joe Spotanski (father) and Tatanjia Willard Spotanski McNamara (mother) involves custody of their minor daughter. Conflicting state rulings have created an untenable impasse: a Nebraska court has awarded father custody and issued a warrant to arrest mother for keeping the child in Colorado, while a Colorado district court has awarded mother custody and refused to enforce the Nebraska orders.
Father contends that Colorado courts must give full faith and credit to the Nebraska orders. The Colorado district court rejected this contention. It reasoned (1) only Colorado, not Nebraska, had child-custody jurisdiction because Colorado is the child's home state; and therefore (2) the Nebraska custody orders are unenforceable.
We agree with the district court's first premise. But the second does not follow inexorably from the first.
We hold the Nebraska court's jurisdictional and later rulings are binding on Colorado courts. We accordingly are constrained to reverse the district court's judgment. Nonetheless, we strongly urge the Nebraska courtand, if necessary, that state's appellate courtsto reconsider Nebraska's apparent lack of jurisdiction.

I. Background

A. Father breached the custody and visitation agreement.
The parties separated after having lived together in Colorado, with a daughter born in 2001. Father moved to Nebraska. In May 2004, he signed a written agreement stipulating that the couple's child had resided in Colorado since August 2003 and that all custody matters would be under Colorado jurisdiction. The agreement provided the child would continue to reside in Colorado with mother, but allowed father certain visitation rights.
*1230 In the summer of 2004, Father took the child to Nebraska for an agreed-upon visit. He later refused to return her to Colorado.

B. The Nebraska court awarded mother temporary custody.
In November 2004, father filed a separation action in Nebraska and asked to be awarded custody. In February 2005, following an evidentiary hearing in which both parties appeared with counsel, the Nebraska court awarded temporary custody to mother. It found mother had been "the primary caretaker" until father took the child to Nebraska. The court further found that father had "violated the agreement by refusing to return the minor child to Colorado." It ordered that father immediately return the child to mother.

C. The Adams County District Court dismissed mother's Colorado dissolution action.
Meanwhile, in December 2004, mother had filed a pro se action for dissolution of marriage in Adams County, Colorado. In January 2005, after a hearing in which mother was unrepresented by counsel, an Adams County district judge issued a minute order dismissing the dissolution action. The only explanation for the dismissal was that "the State of Nebraska has jurisdiction over the matter." The minute order made no reference to child custody.

D. The Nebraska court's final decree awarded father custody.
In September 2006, the Nebraska court issued a final decree dissolving the parties' marriage. The decree stated that father and his counsel had appeared personally at the final hearing but that the unrepresented mother had not appeared.
The decree addressed the court's "jurisdiction" without specifically finding anything about the child's home state. It stated that father had met Nebraska's residency requirements and that there was no other pending dissolution action. The court concluded it had "jurisdiction of both parties and the subject matter of the action."
The decree awarded father custody of the daughter. After finding that father could provide a stable home life for the child, whereas mother had been "evasive" regarding her address and living situation, the court found it was in the best interests of the minor child that custody be awarded to father. The decree provided visitation rights to mother.
Mother attempted to appeal the decree to the Nebraska Court of Appeals. That court dismissed the appeal, without reaching the merits, because mother failed to perfect the appeal in accordance with Nebraska procedural rules.

E. The Nebraska court specifically addressed child-custody jurisdiction in an April 2007 order.
It was not until an April 2007 order that the Nebraska court first specifically addressed its jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), as enacted in Nebraska. That order was issued in response to mother's motion to dismiss the Nebraska action for lack of UCCJEA jurisdiction. Mother testified in support of her motion that Nebraska was not the child's home state because father had not lived with the child there for the requisite six months before filing the action.
The court's order acknowledged that it "may have asserted jurisdiction based on facts that were not presented accurately and/or facts that were not presented at all." Nonetheless, it held that mother had "voluntarily submitted the issue of custody to the court" and had not raised the issue of UCCJEA jurisdiction until after the final decree awarding father custody. The court also noted that mother "had the opportunity to appeal the decision and did [unsuccessfully seek to] appeal the decision to the Nebraska Court of Appeals."
The court further ruled that it properly could exercise jurisdiction even if Nebraska was not the child's home state. It relied on a UCCJEA provision allowing another court to exercise jurisdiction if a court in the child's home state declines jurisdiction on the ground that the other court is the more *1231 appropriate forum and if the other court has significant contacts with a parent and the child. The court, in finding this provision satisfied, cited the dismissal of mother's dissolution action by the Colorado (Adams County) district court.
Mother attempted to appeal. The Nebraska Court of Appeals again dismissed her appeal on procedural grounds.

F. The child continues to reside with mother in Colorado.
Despite the Nebraska decree and subsequent orders issued by the court in Nebraska, the daughter continues currently to reside with mother in Colorado. Mother's failure to comply with the Nebraska orders has resulted in the issuance of a Nebraska warrant for her arrest.

G. The La Plata County District Court in Colorado exercised UCCJEA jurisdiction.
Mother, while continuing to challenge the Nebraska court's jurisdiction, filed a second action for dissolution of marriage in Colorado. This action was filed in late 2006 in La Plata County. The district court converted the dissolution action into a proceeding for allocation of parental rights and responsibilities.
The district court made an initial finding in December 2006 that it had UCCJEA jurisdiction because Colorado was the child's home state. In July 2008, a permanent orders hearing was held before a different judge. At that hearing, the court took evidence on father's motions to dismiss the Colorado proceeding and to enforce the prior Nebraska decree.
The district court adhered to its initial jurisdictional ruling and declined to enforce the Nebraska court order at the permanent orders hearing. The court specifically found that Colorado had UCCJEA jurisdiction and Nebraska did not.
It heard testimony from both parents and one other witness to allocate parental responsibilities in the best interests of the child. See generally § 14-10-124, C.R.S.2009. The court found that both father and mother were good and loving parents. And it recognized the two-state jurisdictional battles adversely affected not only each parent but also the child. It ordered that the child remain in Colorado in mother's custody, and it limited father to supervised visitations so he could not remove the child outside the state.

II. Discussion
We must decide: (A) whether the Colorado district court had jurisdiction to resolve this custody dispute; and, if so, (B) whether the Colorado court was obligated to respect the Nebraska court's prior orders on child custody. We hold the Colorado court did have home-state jurisdiction and Nebraska never did. We nonetheless hold that in exercising this home-state jurisdiction, the Colorado court was bound to respect the Nebraska court orders.

A. Subject Matter Jurisdiction Under the UCCJEA
The district court found it had subject matter jurisdiction because Colorado was the child's home state. We will "uphold a trial court's findings of jurisdictional facts unless they are clearly erroneous." City & County of Denver v. Crandall, 161 P.3d 627, 633 (Colo.2007). Whether those facts support UCCJEA jurisdiction is a legal question subject to de novo appellate review. People in Interest of D.P., 181 P.3d 403, 406 (Colo. App.2008).
The UCCJEA provides four interdependent bases for initial child-custody jurisdiction, and we are concerned principally with the first two: (1) home state; and (2) significant connection. § 14-13-201(1)(a)-(b), C.R.S.2009. All four jurisdictional bases are prioritized such that each can be considered only after eliminating any preceding ones. See id. & official cmt. 1. In particular, "the UCCJEA prioritizes `home state' jurisdiction." People in Interest of A.J.C., 88 P.3d 599, 609 (Colo.2004). A non-home-state court cannot exercise significant-connection jurisdiction unless it finds either that there is no home state or that a home-state court has declined to exercise jurisdiction on the *1232 ground that the other state is a more convenient forum. § 14-13-201(1)(b).
To be considered a "home state," the child must have lived there with a parent "for at least six consecutive months," including any "period of temporary absence." § 14-13-102(7)(a), C.R.S.2009. A court has home-state jurisdiction if it was the home state on the day the custody action was filed or at any time during the six months preceding the filing. § 14-13-201(1)(a); see Rosen v. Celebrezze, 117 Ohio St.3d 241, 883 N.E.2d 420, 427-28 (2008) (explaining that despite some confusing language in the definitional section, this consecutive six-month period can be either immediately preceding the filing or at any time during preceding six months) (citing Stephens v. Fourth Judicial Dist. Court, 331 Mont. 40, 128 P.3d 1026, 1029 (2006)). Thus, where a child with home-state status in one state is moved for any reason to a second state, the child will not lose home-state status in the first state or gain it in the second for another six months. See id. at 428-29 (citing additional cases).
The district court found that Colorado was the child's home state because mother had lived with the child here for more than six months during the relevant period. We accept this finding because father has not shown it was based on any legal error or clearly erroneous factual finding.
Father contends, however, that the district court was barred from exercising its jurisdiction by § 14-13-206(1), C.R.S.2009. This provides, with inapposite exceptions, that a Colorado court "may not exercise its jurisdiction" if a custody proceeding previously "has been commenced in a court of another state having jurisdiction substantially in conformity with" the UCCJEA. Id.
This section's applicability turns here on whether the Nebraska court "ha[d] jurisdiction substantially in conformity with" the UCCJEA. Id. We conclude it did not.
No evidence was cited by the Nebraska court nor has father cited any evidence to Colorado courts that the child lived in Nebraska for six consecutive months prior to father's Nebraska filing. To the contrary, the Nebraska court's January 2007 order seems to acknowledge that father had been living in Nebraska with the child (whom he kept there in violation of his agreement with mother) for less than six months when he filed the Nebraska action in November 2004. Accordingly, the Nebraska court lacked home-state jurisdiction under the UCCJEA as enacted in Nebraska. See Carter v. Carter, 276 Neb. 840, 758 N.W.2d 1, 6-8 (2008).
Only Colorado, not Nebraska, had home-state jurisdiction. A Nebraska court thus could not have had UCCJEA jurisdiction unless a Colorado court "declined to exercise jurisdiction on the ground that [Nebraska] is the more appropriate forum." Neb.Rev.Stat. § 43-1238(a)(2); accord § 14-13-201(1)(b) (Colorado's codification of this same second basis for UCCJEA jurisdiction).
No Colorado court has ever declined to exercise home-state jurisdiction on the ground that Nebraska is the more appropriate forum for resolving child custody. Under both the Colorado and Nebraska codifications of the UCCJEA, such a declination would require determining Colorado to be "an inconvenient forum." § 14-13-207(1), C.R.S.2009; Neb.Rev.Stat. § 43-1244(a). And before making an "inconvenient forum" determination, the declining court would have to consider several enumerated factors. § 14-13-207(1)(b); Neb.Rev.Stat. § 43-1244(b).
Father contends the Adams County District Court so declined jurisdiction when in January 2005 it dismissed a marriage dissolution action that mother had filed pro se a month earlier. We disagree.
The terse minute order dismissing mother's dissolution action made no reference to child custody, and there is no indication the court ever considered that specific issue. The only explanation for dismissing the dissolution action was that "the State of Nebraska has jurisdiction over the matter." That explanation would be patently insufficient had the court intended to decline home-state jurisdiction under the UCCJEA in favor of the Nebraska court. We conclude the Adams County District Court never declined child custody jurisdiction on inconvenient forum grounds.
*1233 We accordingly hold that the La Plata County District Court had UCCJEA jurisdiction and was not precluded from exercising it. Conversely, the Nebraska district court did not have UCCJEA jurisdiction that could overcome home-state jurisdiction.

B. Full Faith and Credit Requirements
This dispute is not ended by our determination that Colorado rather than Nebraska had UCCJEA jurisdiction. Because a Nebraska district court previously reached a contrary conclusion regarding its own UCCJEA jurisdiction, we must also decide whether Colorado courts are bound to respect the Nebraska jurisdictional rulings and ensuing orders.
The Constitution requires states to give "Full Faith and Credit" to other states' judicial proceedings, and it empowers Congress to enact laws prescribing the effect to be given those proceedings. U.S. Const. Art. IV, § 1. The Parental Kidnapping Protection Act (PKPA), 28 U.S.C. § 1738A, and section 303(1) of the UCCJEA, § 14-13-303(1), C.R.S.2009, specifically address when other states' custody rulings must (and when they need not) be honored.
The PKPA was enacted in 1980 because uncertainties in applying the Constitution's Full Faith and Credit Clause to custody orders had "contributed to widespread jurisdictional deadlocks." Thompson v. Thompson, 484 U.S. 174, 180, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988). Those uncertainties had arisen because custody rulings typically were subject to modification; this caused some courts to "doubt[ ] whether custody orders were sufficiently `final' to trigger full faith and credit requirements" and other courts to feel "entitled to change the terms of custody according to their own views of the child's best interest." Id. It was "one of the chief purposes of the PKPA ... to `avoid jurisdictional competition and conflict between State courts.'" Id. at 177, 108 S.Ct. 513 (quoting legislative note).
The UCCJEA, enacted in Colorado in its current form in 2000, similarly was designed to reduce or eliminate interstate conflicts. Indeed, the first stated purpose of the UCCJEA is to: "Avoid jurisdictional competition and conflict with courts of other States in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being." § 14-13-101 official cmt., C.R.S. 2009.
The UCCJEA seeks to prevent interstate conflicts by replacing a prior uniform law (the Uniform Child Custody Jurisdiction Act or UCCJA) that had provided four independent, non-prioritized jurisdictional bases. See Title 14, art. 13, UCCJEA Prefatory Note, C.R.S.2009. The UCCJEA vests priority in courts of the child's home state. Id. (citing § 14-13-201). It encourages communications between courts of different states to determine which state should assume jurisdiction over child custody. § 14-13-110 & official cmt., C.R.S.2009. And once one state's courts properly have issued a custody order, the UCCJEA strictly limits an out-of-state court's jurisdiction to modify that order. § 14-13-203, C.R.S.2009.
The PKPA and UCCJEA differ in some respects but both provide conditions on the obligation of one state to enforce another state's custody orders. The former requires enforcement where the other state court's custody order was "made consistently with the [PKPA's] provisions." 28 U.S.C. § 1738A(a). The latter requires enforcement if the other state's court "exercised jurisdiction in substantial conformity with" the UCCJEA. § 14-13-303(1).
Thus, a custody order is not entitled to enforcement if the court refused to honor the home-state priority required by both the PKPA and UCCJEA. The UCCJEA commentary makes this point clear:
[A] custody determination made by a "significant connection" jurisdiction when there is a home State is not enforceable under the PKPA regardless of whether a proceeding was ever commenced in the home State. Even though such a determination would be enforceable under the UCCJA with its four concurrent bases of jurisdiction, it would not be enforceable under this Act. This carries out the policy of the PKPA of strongly discouraging a State from exercising its concurrent "significant *1234 connection" jurisdiction under the UCCJA when another State could exercise "home state" jurisdiction.
§ 14-13-303 official cmt.
In construing the PKPA and UCCJEA, we must be mindful of Supreme Court Full Faith and Credit cases establishing a "rule of jurisdictional finality." Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 705-06 & n. 11, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982). Under this rule, one state's courts may conduct only a "limited scope of review" in deciding whether another state's courts "had jurisdiction to render a challenged judgment." Id. at 706, 102 S.Ct. 1357.
The "general rule" is that a "judgment is entitled to full faith and crediteven as to questions of jurisdictionwhen the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963), cited in Marshall v. Marshall, 547 U.S. 293, 314, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). Thus, in Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948), Massachusetts was required to recognize a Florida divorce decree even though its courts found Florida lacked subject matter jurisdiction because both parties were Massachusetts residents. See also Gamas-Castellanos v. Gamas, 803 N.E.2d 665, 666 (Ind.2004) (custody decree entitled to full faith and credit "even if Louisiana erred in determining which state was the home state for purposes of deciding custody").
We accordingly will review the Nebraska order to ensure it did not rest on a jurisdictional premise contrary to those in the PKPA and UCCJEA. But if the Nebraska court based its jurisdiction on a legal ground allowed by the PKPA and UCCJEA, a Colorado court may not disregard the Nebraska custody order simply because the jurisdictional ruling was factually incorrect.
The Nebraska court's order rejecting mother's challenge did not find that Nebraska had home-state jurisdiction but did assert two other rationales for exercising jurisdiction. First, the court wrote that mother had "voluntarily submitted the issue of custody to the court" without raising the issue of jurisdiction until after the final decree. Second, it wrote that it had properly exercised UCCJEA jurisdiction because Colorado had declined jurisdiction and Nebraska had significant contacts with father and the child.
The first rationale could not provide a proper jurisdictional basis. The "UCCJEA addresses subject matter jurisdiction," which "may not be waived [by a parent's participation in the proceedings] and can be raised at any stage in the proceedings." In re Marriage of Pritchett, 80 P.3d 918, 921 (Colo.App.2003). Nebraska likewise follows the settled rule that subject matter jurisdiction cannot be conferred by consent or waiver, Cummins Management, L.P. v. Gilroy, 266 Neb. 635, 667 N.W.2d 538, 542 (2003), and thus "may be raised at any time by any party or by the court sua sponte." Betterman v. State, 273 Neb. 178, 728 N.W.2d 570, 580 (2007).
The court's second rationale, however, would provide a basis for exercising jurisdiction consistently with the PKPA and in conformity with the UCCJEA. See 28 U.S.C. § 1738A(c)(2)(D); Neb.Rev.Stat. § 43-1238(a)(2); § 14-13-201(1)(b). This jurisdictional ruling must be respected by Colorado courts even though we now have determined that it was based on the erroneous premise that a Colorado court had declined to exercise home-state jurisdiction on convenience grounds. As we have explained, the enforceability of another state's custody order under the PKPA and UCCJEAand under more general Full Faith and Credit Clause case lawdoes not turn on whether the other state correctly decided its own jurisdiction. Because the Nebraska court based its jurisdiction on a ground recognized by the PKPA and the UCCJEA, and because it provided at least a colorable basis for its finding after a hearing in which mother participated, a Colorado court must respect and enforce the prior Nebraska orders.
We recognize the injustice that may occur if the Nebraska court adheres not only to its *1235 jurisdictional ruling but also to its substantive orders involving custody of this child. A Colorado court has determined after a full hearing in which both parents participated that the child should remain in mother's custody in Colorado, where the child has now lived most of her life. The Nebraska court's contrary custody ruling was issued three years ago without full participation by mother.
In order to minimize the risk of injustice, we direct the Colorado district court on remand to communicate these concerns and later developments to the Nebraska district court pursuant to the procedures established by § 14-13-110. The Colorado court should determine whether the Nebraska court is willing to reconsider its jurisdictional and substantive orders. If the Nebraska court relinquishes jurisdiction, as we urge it to do, the Colorado court may proceed to exercise exclusive jurisdiction over the child-custody proceeding. If, however, the Nebraska court adheres to its rulings, the Colorado court must respect them. Mother's only recourse in that event would be to seek redress through the Nebraska judicial system.

III. Conclusion
The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
Judge RUSSEL and Judge STERNBERG,[*] concur.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S.2009.